### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHRISTOPHER E. KOCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  CIV-07-15-HE** |
| | ) | |
| **J. D. DANIELS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this suit under 42 U.S.C. § 1983 alleging a violation of his constitutional rights.  Pursuant to an order entered by United States District Judge Joe Heaton, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth herein, it is recommended that the complaint be dismissed upon filing.

Plaintiff brings this action against J.D. Daniels, Assistant Director of the Oklahoma Pardon and Parole Board, seeking declaratory and injunctive relief.  Plaintiff alleges that he was convicted of first degree murder in 1981, and is currently serving a sentence of life with the possibility of parole as a result of that conviction.  Complaint, p. 2(A).  He alleges that he received notice of parole consideration in 1982, and in 1989, he received notice of a preparole conditional supervision eligibility date of January 1995.  Id.  He states that he was denied preparole, and was denied both preparole and parole the following year.  Id.  He alleges that preparole was abolished by the Oklahoma legislature in 1997, and replaced with "specialize" parole.  Id.  The change, according to Plaintiff, also provided that upon denial of parole, he would not be reconsidered for three years.  Id.  He claims that the Pardon and Parole Board later amended its policy and procedures

manual in accordance with the statutory change. Id. at 2(B).  In a three-count complaint, he contends first that the changes in the statute requiring him to serve 85% of the midpoint of his sentence before parole consideration and providing for no reconsideration for three years upon denial is a retroactive application of a law in violation of the Ex Post Facto Clause and also violates the Due Process Clause of the United States Constitution.  Complaint, p. 3(A)-(B).  Second, he claims that the Oklahoma Pardon and Parole Board's change in its policy to implement the statutory changes in parole consideration is in violation of the Ex Post Facto Clause and the Due Process Clause.  Complaint, p. 3(A)-(B). In Count III, Plaintiff claims that the abolishment of the Preparole Conditional Supervision program is in violation of both the Ex Post Facto Clause and the Due Process Clause.  Complaint, p. 4(A)-(B).

## I. SCREENING REQUIREMENT

28 U.S.C. § 1915A provides that  "The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Because Plaintiff's claims involve a civil action "brought with respect to prison conditions," screening is also necessary under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1).   Section 1997e(c)(1) provides:

> The court shall . . . dismiss any action brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . . .

For the reasons set forth below, the undersigned recommends dismissal of this action for failure to state a claim upon which relief can be granted.

## II. DISCUSSION

### A. EX POST FACTO CLAIM

As previously noted, Plaintiff's claim is based on his allegation that the above-noted changes to Oklahoma's parole statutes and policies is an ex post facto law when applied to him. The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." Weaver v. Graham, 450 U.S. 24, 30 (1981). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250 (2000). However, the controlling inquiry is not whether the law is retroactive, but "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995). Because no mechanical formula exists for determination of whether a new law or regulation sufficiently increases punishment to be considered ex post facto, the Court must determine on a case-by-case basis whether the change "'produces a sufficient risk'" of greater punishment. Raymer v Enright, 113 F.3d 172, 174 (10th Cir. 1997) (citation omitted).

In Garner, a civil rights action filed by a Georgia state inmate pursuant to 42 U.S.C. § 1983, the Supreme Court examined whether the retroactive application of Georgia's amended parole law, which changed the frequency of required reconsideration hearings for inmates serving life sentences, violated the Ex Post Facto Clause. The Court in Garner

noted that in <u>Morales</u>[1] it had found no ex post facto violation because "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." <u>Garner</u>, 529 U.S. at 250.  The Court reiterated that the appropriate test is whether the amended rule creates " a sufficient risk of increasing the measure of punishment attached to the covered crimes." <u>Id.</u>  The Court took into account the Georgia Parole Board's broad discretion to determine whether an inmate should receive early release and how often to set an inmate's date for reconsideration, with an eight-year maximum. <u>Id.</u> at 253.  The Georgia board's policies also permitted expedited parole reviews where there was a change in the inmate's circumstance or the board received new information warranting earlier review. <u>Id.</u> at 254.  The Court held the inmate must show, as applied to his own sentence, that the amended law created a significant risk of increasing his punishment. <u>Id.</u> at 255.  The Court then concluded that:

> [w]hen the rule does not by its own terms show a significant risk, the [prisoner challenging the retroactive application to the amendment] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

---

[1]In <u>Morales</u>, a federal habeas action pursuant to 28 U.S.C. § 2254, the Supreme Court found that a California statute which changed the frequency of reconsideration for parole from every year to up to every three years for prisoners convicted of more than one homicide did not violate the ex post facto prohibition. The <u>Morales</u> Court identified three major factors shaping its conclusion. First, the amendment applied only to a class of prisoners (those convicted of more than one homicide) "for whom the likelihood of release on parole is quite remote." <u>Morales</u>, 514 U.S. at 511.  Second, the amendment had no effect on the date of any prisoner's initial parole suitability hearing but affected "the timing only of subsequent hearings." <u>Id.</u>  Further, a default provision required an annual hearing, subject to the Board's discretion to "defer the next hearing up to two years more depending on the circumstances." <u>Id.</u>  Given these factors, the Court concluded that the statutory amendment created "only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes" and, therefore, did not violate the Ex Post Facto Clause. <u>Id.</u> at 514.

Id. at 255.

In the instant case, the relevant statute, amended in 1998, provides in pertinent part:

> Except as otherwise directed by the Pardon and Parole Board, any person who has been considered for parole and was denied parole or who has waived consideration shall not be reconsidered for parole:
>
> (1) Within three (3) years of the denial or waiver, if the person was convicted of a violent crime as set forth in Section 571 of this title, and was eligible for consideration pursuant to paragraph 1 of subsection A of this section or subsection B of this section, unless the person is within one (1) year of discharge . . . .

Okla. Stat. tit. 57, § 332.7(D)(Supp. 1998).

Applying the Supreme Court's analysis to the Plaintiff's ex post facto claim, the undersigned finds Plaintiff has failed to show that the application of this statutory amendment created a significant risk of increasing his punishment.  As in Morales, Plaintiff does not allege that the amendment affected his initial parole consideration; rather, he claims the change affected only the timing of subsequent hearings.  Morales, 514 U.S. at 511.  The Oklahoma parole statutes continue to give the Board broad discretion in making its recommendations for parole to the Governor, and do not affect whether or when the Board can parole Plaintiff.  See Okla. Stat. tit. 57, § 332.7.  Finally, the amendment applies only to a class of prisoners - those convicted of "a violent crime" for whom the likelihood of release is remote.  The likelihood that the amendment would affect Plaintiff's release appears particularly remote where Plaintiff alleges that he has been considered for and denied parole on multiple occasions.

The Tenth Circuit addressed a similar challenge by a habeas petitioner to amendments to the parole statute and the Board's policy in <u>Henderson v. Scott</u>, 260 F.3d 1213 (10th Cir. 2001).  The Circuit Court rejected the inmate's facial challenge to Oklahoma's amended parole law, finding that the altered statute (1) "does not change the length of the sentence in any way," (2) "does not affect the timing of the initial parole consideration, only of subsequent parole consideration dates, (3) "clearly reserves the [Parole] Board's discretion to reconsider parole before the three-year period has expired," and (4) that the Parole Board's policy manual "indicates that the [Parole] Board has the authority to defer reconsideration for up to five years, but that it can modify parole consideration dates if the [Parole] Board receives new information." <u>Id.</u> at 1216-1217. The Tenth Circuit also addressed Mr. Henderson's challenge to the amended parole statute as applied to his sentence.  The Court found that Mr. Henderson had not shown that his circumstances had " changed sufficiently in light of his convictions and sentences to warrant an earlier parole consideration date" and that it was "only remote speculation to suggest that the application of the amended statute in Mr. Henderson's case [would] increase his punishment . . . ." <u>Id.</u> at 1217.  Because Mr. Henderson had not shown that the amended statute would prolong his punishment either on the face of the statute or as applied to his circumstances, the Court found that the statute did not violate the Ex Post Facto Clause.

The Circuit Court has also relied upon <u>Morales</u> to reject ex post facto challenges to similar changes in Oklahoma parole procedures in two unpublished decisions.  In

Herrera v. Keating, No. 97- 6078, 1997 WL 687695 (10th Cir. Oct. 30, 1997),[2] the habeas petitioner alleged that the parole policy in effect at the time he committed his crime entitled him to parole consideration every twelve months after initial parole consideration and that amendments to that policy allowing such hearings to be deferred up to five years effectively increased his punishment.  Rejecting this claim, the Tenth Circuit stated:

> 'The [new policy] has no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings.' Morales, 514 U.S. at 511.  'Rather than changing the sentencing range applicable to covered crimes, the [Oklahoma Pardon and Parole Board's 1991 policy] simply alters the method to be followed in fixing a parole release date under the identical substantive standards.' Id., at 507-508 (quoting Miller v. Florida, 482 U.S. 423, 433 (1987)). . . . Also unchanged is the discretion retained by the Pardon and Parole Board in making its recommendations for parole to the Governor. . . . Finally, Mr. Herrera makes no attempt to distinguish the revised Oklahoma policy from the amended statute at issue in Morales, and the record is devoid of any evidence that would support such a claim.  As such, Mr. Herrera has not demonstrated that there is a 'sufficient risk' that the measure of his punishment has changed. . . . Accordingly, there is no implication of the Ex Post Facto Clause here.

Id. at *2-3 (citations and footnote omitted).  See also Harrison v. Champion, No. 99-6312, 1999 WL 1243116, at *1 (10th Cir. Dec. 21, 1999).

Plaintiff likewise fails to allege facts demonstrating that changes in the Oklahoma parole statutes and the policies of the Board lengthening the time between parole reconsideration dates for violent offenders, as applied to him, violate the Ex Post Facto Clause.  Rather, it appears that he relies "only on speculation that the more often he is considered for parole, the higher his chances of release."  Berry v. Scafe, No. 00-3366,

---

[2]This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

2001 WL 909120, at *3 (10th Cir. Aug. 13, 2001). However, "[s]peculation and conjecture that the punishment will be increased by a change lengthening parole hearing intervals are insufficient to invoke the Ex Post Facto Clause." Id. (citing Morales, 514 U.S. at 509-10). The undersigned finds that under the circumstances, the Board's action in extending Plaintiff's parole reconsideration from an annual review to a three-year set off does not present "a sufficient risk that his effective punishment is more onerous under the new [Oklahoma] statute [and regulations]." Raymer v. Enright, 113 F.3d at 176. The undersigned finds that Plaintiff fails to state a claim upon which relief may be granted, and therefore his ex post facto claim should be dismissed.

The same analysis applies to Plaintiff's claim in Count III regarding the statutory abolition of the Preparole Conditional Supervision program. The Preparole Conditional Supervision program (PPCS), adopted by the Oklahoma legislature as a method of reducing prison overcrowding, was available only to certain inmates who were otherwise eligible for parole, had served at least 15% of their sentences, were within one year of a regularly-scheduled release date, and had been recommended for PPCS participation by the Board. Okla. Stat. tit. 57, §365 (A)-(C) (Supp. 1995). The Oklahoma Truth in Sentencing Act, signed into law in 1997, eliminated the PPCS early release program and created specialized parole. See House Bill No. 1213, ch. 133, 1 Okla. Sess. Laws (1997); Okla. Stat. tit. 57, §365 (Supp. 1997). The relevant statute plainly states that even if an inmate is otherwise eligible, a recommendation for PPCS by the Board was merely the beginning of the procedures applicable to release on PPCS:

> (C) Upon favorable recommendation by the Pardon and Parole Board, notification shall be made to the Department of Corrections that said inmate has been recommended to be placed in this program.
>
> (D) Prior to placement of an inmate on [PPCS], the Department shall provide written notification to the sheriff and district attorney of the county in which any person on [PPCS] is to be placed and to the chief law enforcement officer of any incorporated city or town in which said person is to be placed . . . The Department shall also give written notification . . . to any victim of the crime for which the inmate was convicted. . . .

Okla. Stat. tit. 57, §365 (C) and (D)(Supp. 1995).  Thus, the Oklahoma statute in question, prior to its repeal, clearly granted the Board discretion in recommending inmates for preparole.  Moreover, as the statute plainly states, even if otherwise eligible, the PPCS placement process merely began with the discretionary recommendation by the Board and notification to DOC that an inmate had been recommended.  Indeed, the chronology alleged by Plaintiff indicates that he was denied PPCS release.  Complaint, p. 2(A).  In 1995, the Tenth Circuit concluded that release on preparole in Oklahoma, which "releases qualified inmates into society on a conditional basis," is the functional equivalent of parole.  Harper v. Young, 64 F.3d 563, 565 (10th Cir. 1995), affirmed, 520 U.S. 143 (1997). For the above reasons, the undersigned finds that Plaintiff has failed to state a claim for relief under the Ex Post Facto Clause.

**B.  DUE PROCESS CLAIM**

Plaintiff also alleges that the changes in question were in violation of his rights under the Due Process Clause.   It is axiomatic that the Due Process Clause of the Fourteenth Amendment only applies when the challenged governmental action deprives an individual of life, liberty, or property.  Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  "There is no constitutional or inherent

right of a convicted person to be conditionally released before the expiration of a valid sentence." Id. See also Lustgarden v. Gunter, 966 F.2d 552, 555 (10th Cir. 1992). The Supreme Court has held that a discretionary state parole system which "holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained" and, accordingly, does not implicate the protections of due process. Greenholtz, 442 U.S. at 10; accord Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465 (1981); Jago v. Van Curen, 454 U.S. 14, 21 (1981).

Both the Tenth Circuit Court of Appeals and the Oklahoma courts agree that Oklahoma's statutory parole scheme does not create a liberty interest in early release. See Brooks v. Oklahoma Pardon and Parole Board, No. 93- 6126, 1993 WL 525749, *2 (10th Cir. Dec. 20, 1993)(concluding that the Oklahoma parole statutes "do not create a liberty interest in parole") (citing Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir. 1979)); Phillips v. Williams, 608 P.2d 1131, 1135 (Okla. 1980)(Oklahoma law lacks mandated standards of inmate-parole-release eligibility and as parole remains "a 'hope' or 'possibility' [claim of entitlement to parole consideration] stands unprotected by the Due Process Clause of the Fourteenth Amendment.").

Harper v. Young, 64 F.3d 563 (10th Cir. 1995), affirmed, 520 U.S. 143 (1997), is factually distinguishable, and actually lends support to the conclusion that the possibility of parole does not give rise to a liberty interest.  In Harper, the petitioner had been placed in PPCS,[3] released from prison, and was subsequently removed from the program and

---

[3]The Circuit Court described the PPCS program as follows:

> Although remaining in the "constructive custody" of the Department of
> (continued...)

reincarcerated without being granted any type of hearing. 64 F.3d at 564. He sought

habeas corpus relief on the basis that he had been denied his liberty without due process.

The Tenth Circuit agreed that the petitioner had a liberty interest in remaining in the

program, which interest was inherent in the Constitution and thus protected by the Due

Process Clause.  Id. at 566.   The Tenth Circuit's evaluation of a prisoner's due process

claims in Harper is instructive:

> "A liberty interest inherent in the Constitution arises when a
> prisoner has acquired a substantial, although conditional, freedom such
> that the loss of liberty entailed [by its revocation] is a serious deprivation
> requiring that the [prisoner] be accorded due process." (alterations in
> original; quotations omitted). . . . [T]he dispositive characteristic that marks
> the point at which the Due Process Clause itself implies a liberty interest
> . . . *is the fact of release from incarceration*. The liberty associated with a life
> outside the walls of a penal facility dwarfs that available to an inmate. . .
> The passage outside the walls of a prison does not simply alter the degree
> of confinement; rather, it works a fundamental change in the kind of
> confinement, a transformation that signals the existence of an inherent
> liberty interest and necessitates the full panoply of procedural protections
> outlined in Morrissey. (emphasis in original).

Harper, 64 F.3d at 566 (emphasis added).  Here, Plaintiff has failed to allege a

constitutionally-derived or a state-created liberty or property interest in parole or

preparole status.   The lack of a liberty interest is fatal to his due process claims.

Accordingly, the undersigned finds that Plaintiff has failed to state a cognizable claim

under the Due Process Clause.

---

[3](...continued)
Corrections, those in the Program work and reside beyond the confines of a state penal
institution and are thus free to enjoy most of the benefits of a normal existence. In return,
a program participant must agree to abide by restrictions similar to those placed upon a
parolee. Violation of a condition may result in termination from the Program and a return
to incarceration.

Harper, 64 F.3d at 565 (emphasis added).

### C.  STATUTE OF LIMITATIONS

Finally, it appears that even if Plaintiff could state a claim under either of his theories, the applicable statute of limitations would bar his claim.  The period of limitations for a § 1983 action is governed by the forum state's statute for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276-80 (1985) (holding that the statute of limitations for § 1983 is based upon the applicable state law limitations for a private tort action), superseded by statute on other grounds, as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-78 (2004).  Thus, in Oklahoma, the limitations period for § 1983 actions is two years.  See Okla. Stat. tit. 12, § 95(3); see also Meade v. Grubbs, 841 F.2d 1512, 1522 (10th Cir. 1988).

Although the length of the limitations period is determined by reference to the law of the forum state, accrual of the cause of action is determined by federal law.  Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995) ("While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims.").  "Since the injury in a § 1983 case is the violation of a constitutional right . . . such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" Smith v. City of Enid, 149 F.3d 1151, 1154 (10th Cir. 1998)(quoting with approval Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994)); see also Fratus v. DeLand, 49 F.3d at 675 ("A civil rights action accrues when 'facts that would support a cause of action are or should be apparent.'") (citations omitted).  The Court must therefore identify the constitutional violation and locate it in time.  Smith v. City of Enid, 149 F.3d at 1154.

Plaintiff alleges that he has appeared before the Parole Board three times since the amendment of the statutes in question, and twice since amendment of the Board's policy: 1998, 2001, and 2005.  Complaint, p. 4(B).  He alleges that he was denied parole each time, and was not considered for preparole release as he had been in 1996, 1997, and 1998.  Id.  Plaintiff has thus demonstrated by his own statements that after parole was denied in 1998, he should have known at least by 1999 that he was no longer being reconsidered annually for parole, but every three years.  Complaint, p. 3(A), 4(B) ("Plaintiff, by Pardon and Parole Board policy ... after denial of parole consideration would be regularly scheduled for a new docket date one (1) year after the denial of parole consideration."  "Since the 1997 amended statute, Plaintiff has been befor[e] the Parole Board three, (3) times 1998, 2001, and 2005.")  It is therefore apparent that none of Plaintiff's claims accrued any later than 2001,[4] when it was clear that Plaintiff was no longer receiving annual parole consideration, and was also not being considered for preparole.  Plaintiff's complaint filed January 4, 2007, was not filed within two years of the accrual of his claim.

Moreover, the Board's continued action does not render the action timely.  The Eleventh Circuit rejected a virtually identical argument in a state prisoner's § 1983 challenge to a change in the Georgia parole board's policy regarding the frequency of parole review.  Brown v. Georgia Board of Pardons & Paroles, 335 F.3d 1259 (11th Cir. 2003).  In Brown, a state prisoner asserted that the retroactive application of the new policy allowing parole reconsideration hearings to be set off for up to eight years instead

---

[4]Plaintiff's claim regarding the change from annual consideration to consideration every three years accrued no later than 1999 when he did not receive his next annual consideration after his 1998 denial.

of every three years amounted to an ex post facto violation.  The record in <u>Brown</u> reflected that Mr. Brown was notified in 1995 that his next parole hearing would be scheduled for 2000 pursuant to the new policy.  Following a hearing and denial in 2001, Brown's next hearing was set for 2007.  Brown filed his § 1983 action in 2002, purporting to challenge the board's 2001 decision which set his next hearing off for six years.  The district court held that Brown's § 1983 action was untimely because it was filed more than two years after the board changed its policy in 1995.  On appeal, the Eleventh Circuit affirmed, rejecting the prisoner's argument that each application of the new policy constituted a distinct and separate harm.  <u>Id.</u> at 1261.  Rather, the Court held that the statute of limitations begins to run when the "facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights," and that Mr. Brown was made aware in 1995 that his parole reconsideration hearings were being held outside the maximum time mandated by board policy at the time of his conviction.  <u>Id.</u>  The Court determined, therefore, that plaintiff could have discovered the factual predicate for his claim when the board first applied the new policy to him retroactively.  <u>Id.</u> at 1261-62.  Thus, the Court concluded that "[t]he successive denials of parole do not involve separate factual predicates and therefore do not warrant separate statute-of- limitations calculations."  <u>Id.</u> at 1262.

The Eleventh Circuit also rejected Mr. Brown's argument that the application of the new board policy amounted to a continuing violation, citing Eleventh Circuit precedent, <u>Lovett v. Ray</u>, 327 F.3d 1181 (11th Cir. 2003).  <u>Brown</u>, 335 F.3d at 1261.  The Court in <u>Brown</u> noted that like Mr. Lovett, Mr. Brown challenged the Georgia parole

board policy change in a § 1983 action filed more than two years after he was informed of his parole hearing date set in accordance with the new policy. Id. The Court noted that in Lovett, it held that the continuing violation theory did not apply because the decision to set Lovett's parole hearing pursuant to the new policy was a "one time act with continued consequences" which did not extend the limitations period. Brown, 335 F.3d at 1261(quoting Lovett v. Ray, 327 F. 3d at 1183).

Similar to the Eleventh Circuit's reasoning in Brown, the Tenth Circuit's application of the continuing violation theory in other contexts, such as Title VII claims, "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410, 1415 n.6 (10th Cir. 1993), overruled on other grounds by Davidson v. Am. Online, Inc., 337 F.3d 1179 (10th Cir.2003). Thus, the Tenth Circuit has held that even where the continuing violation doctrine is applicable, such claim fails "if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred." Davidson, 337 F.3d at 1184.

In Smith v. Grubbs, No. 01-5193, 42 Fed.Appx. 370 (10th Cir. July 11, 2002), a habeas case factually similar to the instant action, the Tenth Circuit considered the timeliness of the petitioner's challenge to the application of Oklahoma's 1997 statutory changes in parole and early release standards. For purposes of calculating the relevant one-year period under 28 U.S.C. § 2244(d)(1)(D), the Circuit Court found the petitioner could have discovered the factual predicate of his claim in mid-1997, at the time of his

first parole denial, and therefore, the calculation of the one-year limitation period relating to habeas petitions began from that date. Id. at 372. The Court specifically rejected the petitioner's argument that his rights were violated each successive time the state denied him parole, requiring recalculation of the one-year period from the date of each denial. Id.

In light of the Tenth Circuit's requirements for applying the continuing violation doctrine and the Circuit's specific findings in Smith, together with the persuasive Eleventh Circuit decisions, the undersigned concludes that Plaintiff's claim accrued and the limitations period began to run when Plaintiff either knew or should have been aware of the facts supporting his ex post facto claim, that is by 1999, when according to his own statements, his parole reconsideration had been set off for three years, or at the latest in 2001, when he had been both denied annual consideration and not considered for preparole. The undersigned finds therefore that the two-year limitation period governing Plaintiff's § 1983 action against Defendant expired well before Plaintiff filed this action, and it is therefore recommended in the alternative that the complaint be dismissed with prejudice as untimely. See Curley v. Perry, 246 F.3d 1278, 1282 (10th Cir. 2001) (because no amendment would cure the defect, the district court properly dismissed the complaint with prejudice).

## RECOMMENDATION

For the reasons set forth above, it is recommended that this action be dismissed upon filing for failure to state a claim upon which relief can be granted. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the

Clerk of this Court by March 5, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 12th day of February, 2007.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE